UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DOUGLAS ALLEN NOGA,<br><br>                Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,[1]<br><br>                Defendant. | )<br>) No. CV-06-275-CI<br>)<br>) ORDER GRANTING PLAINTIFF'S<br>) MOTION FOR SUMMARY JUDGMENT<br>) AND REMANDING FOR FURTHER<br>) PROCEEDINGS<br>)<br>)<br>)<br>)<br>) |

BEFORE THE COURT are Plaintiff's Motion for Summary Judgment (Ct. Rec. 14) and Defendant's Motion for Summary Judgment (Ct. Rec. 17), noted for hearing with oral argument on April 17, 2007. (Ct. Rec. 9.)  Attorney Rebecca M. Coufal represents Plaintiff; Special Assistant United States Attorney Joanne E. Dantonio represents the Commissioner of Social Security ("Commissioner").  The parties have consented to proceed before a magistrate judge. (Ct. Rec. 3.) After

---

[1]As of February 12, 2007, Michael J. Astrue succeeded Acting Commissioner Linda S. McMahon as Commissioner of Social Security. Pursuant to FED. R. CIV. P. 25(d)(1), Commissioner Michael J. Astrue should be substituted as Defendant, and this lawsuit proceeds without further action by the parties.  42 U.S.C. § 405(g).

reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **REMANDS** the matter to the Commissioner for further proceedings. (Ct. Rec. 14.)  Defendant's Motion for Summary Judgment is **DENIED.** (Ct. Rec. 17.)

**JURISDICTION**

Plaintiff applied for Disability Insurance Benefits ("DIB") on April 25, 2005. (Tr. 54.)  He alleged disability due to repetitive motion injury in his arms and problems with his knees and back, with an alleged onset date of January 24, 1996. (Tr. 54, 70.)  Plaintiff later amended his onset date to January 1, 2004.  (Tr. 69.)  The application was denied initially (Tr. 30-33) and on reconsideration (Tr. 37-38.)  Plaintiff appeared before Administrative Law Judge (ALJ) Mary Bennett Reed on April 20, 2006.  The ALJ heard the testimony of Plaintiff, his spouse, and vocational expert Tom Moreland. (Tr. 242-289.) The ALJ issued a decision on May 8, 2006, finding that Plaintiff was not disabled. (Tr. 13-21.)  The Appeals Council received additional evidence and denied a request for review on August 23, 2006.  (Tr. 5-7.)  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on September 22, 2006. (Ct. Rec. 1.)

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here.

Plaintiff was 51 years old on the date of the ALJ's decision.

(Tr. 21, 107.)  He completed a high-school education and one year of college. (Tr. 76.)  Plaintiff has worked as a data entry clerk and as a non-CAD drafter.[2]  (Tr. 21, 71, 81.)  He alleges that since his amended disability onset date of January 1, 2004, he has been unable to work due to bad knees, back problems, and repetitive motion injury in his arms.  (Tr. 70-71.)

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person is

---

[2]Plaintiff testified that CAD is "Computer Automated Drafting." (Tr. 284.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 3

engaged in substantial gainful activities.  If so, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past.  If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered.  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish

a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the

evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found at the onset that Plaintiff meets the disability requirements set forth in Section 216(I) of the Social Security Act and was insured for disability benefits through December of 2008. (Tr. 13, 15.) The claimant was therefore required to establish disability prior to this date. (Tr. 13.) The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity during any time at issue. (Tr. 15.) At steps two and three, the ALJ found that the medical evidence established that during the relevant

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS – 6

1    time  frame,  Plaintiff  suffered  from  obesity,  degenerative  disc

2    disease  with  minimal  change,  and  hypothyroidism,  impairments

3    considered severe but not severe enough, singly or in combination,

4    to meet or medically equal one of the Listings impairments.  (Tr.

5    15,  18.)    The  ALJ  found  Plaintiff's  testimony  regarding  his

6    limitations  not  fully  credible  (Tr.  19-20),  and  concluded  that

7    Plaintiff has the RFC to perform a narrow range of  light work. (Tr.

8    20.)  At step four, with the assistance of a vocational expert, the

9    ALJ concluded that Plaintiff is able to perform his past work as a

10   data entry clerk and as a non-CAD drafter. (Tr. 20.)  Accordingly,

11   the ALJ determined at step four of the sequential evaluation process

12   that Plaintiff was not disabled within the meaning of the Social

13   Security Act. (Tr. 20-21.)

14                              **ISSUES**

15       Plaintiff contends that the Commissioner erred as a matter of

16   law.  Specifically, he argues that the ALJ erred when she (1) failed

17   to  consider  the  combined  effects  of  all  of  his  impairments,

18   specifically,  obesity  and  degenerative  disc  disease;  (2)  found

19   Plaintiff  less  than  completely  credible;  and  3)  failed  to  fully

20   develop the record. (Ct. Rec. 15 at 6-11.)

21       The Commissioner opposes the Plaintiff's Motion and asks that

22   the ALJ's decision be affirmed. (Ct. Rec. 18 at 18.)

23                            **DISCUSSION**

24   **A.   Weighing Medical Evidence**

25       In  social  security  proceedings,  the  claimant  must  prove  the

26   existence of a physical or mental impairment by providing medical

27   evidence consisting of signs, symptoms, and laboratory findings; the

28   claimant's  own  statement  of  symptoms  alone  will  not  suffice.  20

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 7

C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).

A treating or examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject and opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995).

Plaintiff contends that the ALJ failed to consider the combined effects of his impairments, particularly obesity and degenerative disc disease, and "evidence presented at the hearing  of his difficulty walking which together can be the basis for a listed impairment." (Ct. Rec. 15 at 6-7.) The Commissioner responds that the ALJ properly weighed the medical evidence, and it does not support a finding that Plaintiff's conditions, either singly or in combination, met or equaled the requirements of the Listings at step three. (Ct. Rec. 18 at 6-7.)

In assessing the medical evidence, the ALJ examined the records of Plaintiff's treatment before the onset date of January 1, 2004. The ALJ observes in September of 2001, Frederick Close, M.D., opined after examining Plaintiff that he could return to his job in data

entry. (Tr. 19, citing Tr. 131-139.) The ALJ notes that although Dr. Close's report predates the onset date, it is significant with respect to credibility because Plaintiff has continuously asserted that his painful symptoms are disabling. (Tr. 19.) The ALJ points out that there is a gap in the medical record from October of 2003 until April of 2005, encompassing the entire 2004 calendar year. (Tr. 19.) The ALJ opines that the complete absence of medical records for more than 18 months calls into question the presence of any disabling impairment. (Tr. 19.)

Plaintiff notes that the ALJ did not have the benefit of the physical therapy records provided later to the Appeals Council, and implies that if she had these records, Plaintiff's credibility would be enhanced. The newer records show that Plaintiff began a short regimen of physical therapy on August 5, 2002, and completed it on September 18, 2002. (Tr. 213-214.) Upon completion, Plaintiff's elbow and wrist range of motion were within normal limits, his grip strength had increased, and he reported no pain with gripping. (Tr. 214.) In late September of 2003, Plaintiff went camping and slept on a foam pad for four nights, resulting in low back pain. (Tr. 190.) He was seen by a physical therapist on October 8, 2003, attended 8 sessions, and ended physical therapy after 8 visits on November 17, 2003, because the goals were achieved. Plaintiff was released to a home exercise program. (Tr. 187.) These records reflect that Plaintiff did not seek medical treatment between November 18, 2003, and April 11, 2005, rather than October of 2003 to April 2005, as the ALJ observed. Including the newer records, Plaintiff did not seek medical treatment for about 16 months, rather than 18+ months. The court concludes that this difference is not

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 9

material because the gap is still substantial.  The ALJ's reliance on Plaintiff's lack of medical treatment is a specific and legitimate reason to find Plaintiff less than completely credible.

When she weighed the medical evidence, the ALJ also relied on the results of Plaintiff's physical examinations: range of motion testing has been essentially normal, x-rays of claimed affected areas have repeatedly been normal, and there has been no observable muscle wasting or atrophy occurring in the affected areas, signifying continued use of the involved muscle groups. (Tr. 19-20.)

The evidence supports the ALJ's conclusions.  Before the onset date, x-rays of Plaintiff's right hand, knee and foot were normal. (Tr. 135, 137.) On September 6, 2001, Dr. Close performed an IME. (Tr. 131.) Plaintiff complained of intermittent pain/soreness with over-use of his right hand, elbow and knee. (Tr. 131-132.) Dr. Close found no objective factors of disability; he released Plaintiff to continue his usual job without restriction, although for data entry he recommended a 5 minute rest break every hour. (Tr. 139.) Dr. Close did not recommend surgery or physical therapy, but opined that Plaintiff may continue with nonsteroidal anti-inflammatory medication.[3]  (Tr. 139.)  The ALJ observed that Plaintiff was next seen 7 months later, on April 3, 2002, when he complained that he had experienced severe left low back pain for the past three days. (Tr. 16, citing Tr. 150.) The record shows a short course of medication but no other follow-up or treatment. (Tr. 16.) Plaintiff was seen twice in the ER: on July 12, 2003, for a scorpion bite,

_____

[3]Plaintiff continued to work as a data technician specialist until November 15, 2003.  (Tr. 23.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 10

1   and on July 18, 2003, for chronic intermittent left (not right)
2   shoulder and pectoral pain. (Tr. 140, 144.)  Taylor Fletcher, M.D.,
3   notes that Plaintiff's EKG's prior to July 18, 2003, were normal.
4   (Tr. 144.)  When Plaintiff gave his medical history, he did not
5   mention knee or back problems. (Tr. 16, citing 144.)  According to
6   Dr. Fletcher, Plaintiff is a lifetime nonsmoker; the ALJ incorrectly
7   notes that Plaintiff was reported to be a smoker.  (Tr. 16, 144.)
8   As the Commissioner observes, since none of Plaintiff's impairments
9   are related to this mistake, the error is harmless.[4]

10       The ALJ then analyzed the medical records after the date of
11   onset, January 1, 2004, and noted the gap in treatment from October
12   1, 2003, until April 12, 2005.  As indicated, this was slightly
13   incorrect because later records showed that Plaintiff sought no
14   medical treatment for about 16, rather than 18+, months.  During
15   this gap, Plaintiff and his spouse moved from California to
16   Washington.  On April 12, 2005, Plaintiff saw Clayton Kersting,
17   M.D., requesting a disabled parking permit. (Tr. 160.) Plaintiff
18   also asked Dr. Kersting for a letter for his accountant stating that
19   he is disabled; Plaintiff needed this so that he could get a tax
20   deduction after taking money from his pension plan. (Tr. 160.) Dr.
21   Kersting deferred examination, declined writing a letter opining

22

23       [4]An error is harmless when the correction of that error would
24   not alter the result.  *See Johnson v. Shalala*, 60 F.3d 1428, 1436
25   n.9 (9th Cir. 1995).  Further, an ALJ's decision will not be reversed
26   for errors that are harmless.  *Burch v. Barnhart,* 400 F.3d 676, 679
27   (9th Cir. 2005) (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th
28   Cir. 1991).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 11

Plaintiff was disabled, and gave him a disabled parking permit based on statements that he could not walk 200 feet without significant pain and resting multiple times. (Tr. 160.) Dr. Kersting directed Plaintiff to follow up as needed. (Tr. 160.) The ALJ notes that Plaintiff returned about six months later. (Tr. 17.)

The ALJ also considered the results of a July 1, 2005, examination by Robert Rose, M.D., for a disability-ordered consultative examination. (Tr. 17, citing Tr. 161.) Plaintiff weighed 348 pounds and was six feet and one inch tall. (Tr. 162.) He complained of polyarthralgias affecting the lower back, both knees, and pain in the right arm. Plaintiff was able to walk 100-200 yards. Sitting and standing were limited to 30 minutes. (Tr. 17, citing Tr. 161.) On examination of the back, spine and extremities, Dr. Rose noted no specific spinous process tenderness, pain behavior or muscle spasm. Plaintiff's shoulders, elbows and wrists exhibited no restriction, crepitance, deformity or erythema; and his hands showed no metacarpal phalangeal or interphalangeal abnormality. Motor strength, both active and resistive, was 4-5/5 in all elements affecting the shoulders, elbows, wrists, hips, knees and ankles. (Tr. 162-163.) Dr. Rose found no subluxation, dislocation or ulnar drift. Plaintiff's hips were without restriction, and the knees showed no swelling or erythema. (Tr. 162.) Dr. Rose found no patellar tendon laxity or joint effusion, noted mild hypertrophy on palpitation, and observed that the knees were stable to varus and valgus stress. (Tr. 162.) The results of drawer signs and McMurray's tests were negative; dorsalis pedis and posterior tibial pulses were symmetrically palpable, and Plaintiff's neurological exam was not revealing. (Tr. 162-163.) Dr. Rose diagnosed exogenous

obesity, a co-morbid factor in Plaintiff's knee and back pain complaints, and indicated that there are no current findings of radiographic evaluation. (Tr. 163.) Dr. Rose opined that Plaintiff's co-morbid lumbar pain is most likely attributable to degenerative arthrosis of the lumbosacral spine not associated with evidence of radicular findings; he assessed diminished comparable pinch and grip strength, right compared to left, although two point discrimination is the same. (Tr. 163.) Dr. Rose opined that Plaintiff's ability to handle, grasp and manipulate does not appear to be affected to a significant degree in terms of work-related activities. (Tr. 163.)

The ALJ observed that Plaintiff saw Dr. Kersting the second time on October 13, 2005. (Tr. 18, citing Tr. 177.) He again presented with a claim of disability and asked Dr. Kersting to confirm that his condition has worsened since he left California. (Tr. 177.) Dr. Kersting opined that Plaintiff's x-rays "at this time are really pretty benign." He declined opining that Plaintiff was disabled. Dr. Kersting recommended taking nonsteroidal medication as needed, and instructed Plaintiff to follow up as necessary. (Tr. 177.)

The ALJ notes that on January 31, 2006, Dr. Kersting opined that range of motion testing in both the cervical spine and shoulders had somewhat diminished during the period of September 6, 2001, to October 2005. (Tr. 18, citing Tr. 179.) The ALJ points out that this testing is subjective, and Dr. Kersting stated on the same date that Plaintiff's range of motion varies depending on how he feels at the time. (Tr. 18, citing Tr. 179.) Plaintiff took an herbal remedy for his thyroid condition because the prescribed

1  medication did not make him feel any better.  Dr. Kersting noted no
2  change in range of motion in Plaintiff's lower back or knees since
3  2001; the ALJ observes that Dr. Kersting makes no reference to
4  tangibly impaired arms, bad knees, or back problems. (Tr. 18, 179.)
5  The ALJ considered Plaintiff's impairments "in combination" and
6  concluded that no Listing impairment is met or equaled; she opined
7  that, but for Plaintiff's obesity, his degenerative disc disease and
8  hypothyroidism are nearer non-severe than severe. (Tr. 18.)  No
9  doctor has opined that Plaintiff is disabled.  After exhaustively
10  reviewing the record, the ALJ concluded that Plaintiff retains the
11  RFC for a narrow range of light work.

**B.    Assessing Credibility**

13      Plaintiff contends that the ALJ erred when she weighed
14  credibility. (Ct. Rec. 15 at 7-11).  The Commissioner responds that
15  the ALJ's findings are supported by substantial evidence and free of
16  legal error. (Ct. Rec. 18 at 8-17).

17      It is the province of the ALJ to make credibility
18  determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.
19  1995).  However, the ALJ's findings must be supported by specific
20  cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir.
21  1990).  Once the claimant produces medical evidence of an underlying
22  impairment, the ALJ may not discredit his testimony as to the
23  severity of an impairment because it is unsupported by medical
24  evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)
25  (citation omitted).  Absent affirmative evidence of malingering, the
26  AlJ's reasons for rejecting the claimant's testimony must be "clear
27  and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).
28  "General findings are insufficient: rather the ALJ must identify

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 14

what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  Factors the ALJ may properly consider include claimant's reputation for truthfulness, prior inconsistent statements, unexplained failure to seek medical care or to follow a prescribed course of treatment, and the claimant's activities of daily living.  *See Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).

In this case the ALJ found that Plaintiff suffers from three impairments and there is no evidence of malingering; accordingly, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing.  The ALJ found a minimum of five reasons to doubt Plaintiff's credibility: (1) no treating or examining doctor opined that he was unable to work during the relevant period; (2) examinations show normal x-rays, no musculature wasting, and essentially good range of motion and normal neurological results; (3) from October of 2003 to April of 2005, Plaintiff sought no medical treatment; (4) prescription medication has not been taken or recommended, other than for hypothyroidism; and (5) the activities of daily living are not consistent with the severity of impairment alleged. (Tr. 18-20.)

The ALJ's finding that the medical evidence did not support Plaintiff's complaints is supported by the record.  Perhaps most significantly, no doctor opined that Plaintiff was disabled. Several examining physicians released him to his usual work with no restrictions, other than an hourly five minute rest break when performing data entry.  (Tr. 16-20.)  The ALJ properly considered this factor when she weighed Plaintiff's credibility.

The amount of treatment is an important indicator of the intensity and persistence of a claimant's symptoms. *See* 20 C.F.R. § 404.1529(c)(3). Plaintiff has asserted that he did not seek medical treatment for financial reasons. (Tr. 20, 127.) The Commissioner counters that on at least two occasions, Plaintiff saw Dr. Kersting to seek confirmation of disability, revealing an ability to pay for medical treatment. The ALJ notes that Plaintiff's alleged financial problems are undermined by his purchase of a home and 21 acres, and continued ownership of horses and a motorcycle that he is unable to use. (Tr. 19.) Even when the physical therapy records (not submitted to the ALJ) are considered, the ALJ's finding that Plaintiff had no medical treatment for substantial periods of time remains substantially correct. The lack of treatment undermines the credibility of Plaintiff's allegedly disabling impairments.

Lack of prescription medication is a legitimate factor used to weigh credibility. *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996). Plaintiff takes nonprescription medication, Tylenol and Aleve. (Tr. 20, 100.) Doctors did not prescribe anything stronger for Plaintiff's pain during the relevant time frame. In October of 2005, Dr. Kersting recommended over the counter anti-inflammatory medication. He did not prescribe medication during Plaintiff's visit in January of 2006. (Tr. 179.) The ALJ properly relied on these records when she determined that Plaintiff's use of only over the counter non-prescription medication made his claims of disabling impairments less credible.

With respect to daily activities, Plaintiff told Dr. Kersting in April of 2005, 13 months after the alleged onset date, that he

planned to work as a gunsmith in a new business in the Newport area. The ALJ observes that this type of work is inconsistent with Plaintiff's claimed hand limitations because gunsmith work requires good bimanual manipulation. (Tr. 17, citing Tr. 160; 20.) On May 8, 2005, Plaintiff wrote: "I am capable of preparing all the types of food I desire to eat." (Tr. 95.) Plaintiff indicated that he could drive for an hour at a time. The record reflects that he and his spouse drove from Newport, Washington, to San Diego. (Tr. 20, referring to Tr. 255, 282.)

Plaintiff amended his original onset date from 1996 to 2004, after retaining counsel. (Tr. 69.) He alleges that the ALJ improperly relied on this when she assessed his credibility. (Ct. Rec. 15 at 10.) Plaintiff stopped working in November of 2003. (Tr. 23.) Plaintiff's counsel has asserted that he may have been confused with respect to the meaning of onset dates. (Tr. 69.) To the extent that the ALJ may have relied on Plaintiff's amended onset date when she weighed his credibility, the error if any is harmless because it would not change the result for the reasons discussed earlier. *See Batson v. Commissioner*, 359 F.3d 1190, 1197 (9th Cir. 2004) (applying harmless error rule when assessing an ALJ's credibility findings). Similarly, the ALJ may have erroneously described funds Plaintiff withdrew from a retirement account as savings and as money from selling his home in California. Plaintiff testified: "I cashed out my retirement." (Tr. 260.) He elaborated that "it wasn't retirement because I just quit." (Tr. 267.) At another point, Plaintiff explained: "I cashed out my retirement, we bought the (Washington) property outright, so between that and savings we had put away . . . (and then a few things that we're

selling off) . . . right now we're basically living off of that."
(Tr. 259-260.)  Any error by the ALJ's characterization of the funds
is similarly harmless since it would not change the result.  *See,
Batson*, 359 F.3d at 1197.

The next question is whether the ALJ erred when finding that
Plaintiff did not change his working conditions or miss work because
of his impairments. (Tr. 19.)  Plaintiff did not miss work because
of his impairments, other than briefly for physical therapy;
however, Plaintiff testified that his employer improved the height
of his workspace and replaced his computer mouse to make them more
ergonomic although "they didn't really change" his job function.  He
was still required to reach his quotas. (Tr. 263-264.)  Based on
Plaintiff's unrefuted testimony that his employer changed his
working environment because of his impairments, the ALJ erred when
finding that Plaintiff's impairments did not affect his working
conditions.  Because the error may have changed the result, the
court cannot say that this error is harmless.

The ALJ's credibility assessment was based at least in part on
an error which does not appear harmless.  Accordingly, the case must
be remanded for additional proceedings to correct the legal error.
The ALJ rejected the testimony of Plaintiff's spouse, that
Plaintiff's arm went bad after he stopped working, he drops and
breaks things, and falls down stairs, because it was inconsistent
with the medical evidence. (Tr. 20, relying on Tr. 279-280.)  On
remand the lay testimony should be considered in light of the other
evidence.

**C.    Developing the Record**

Plaintiff alleges that the ALJ erred by failing to obtain

physical therapy records submitted by his current counsel. (Ct. Rec. 15 at 6.) The Commissioner responds that the physical therapy reports considered by the Appeals Council but not by the ALJ would not have changed the ALJ's credibility determination because all examining doctors opined after Plaintiff's physical therapy that he had no work-related limitations and could return to work. (Ct. Rec. 18 at 16.)

The ALJ's duty to develop the record is triggered by ambiguous or inadequate evidence in the record. *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001). In this case, error by the ALJ in failing to obtain Plaintiff's physical therapy records is arguably harmless; however, because the matter is remanded for a new credibility determination, the physical therapy records should be considered during further proceedings. The court expresses no opinion as to what the ultimate outcome on remand will or should be. The fact-finder is free to give whatever weight to the additional evidence is deemed appropriate. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("Q)uestions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary").

### CONCLUSION

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's credibility determination is not free of legal error. The case is remanded for further proceedings to reassess the credibility of Plaintiff and of his spouse. The additional evidence available to the Appeals Council but not to the ALJ, Plaintiff's physical therapy records, are part of the record on remand.

1    **IT IS ORDERED:**

2    1.   Plaintiff's Motion for Summary Motion (**Ct. Rec. 14**) is

3    **GRANTED**.   The matter is remanded to the Commissioner of Social

4    Security for further proceedings consistent with this decision and

5    sentence four of 42 U.S.C. §§ 405(g).

6    2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 17)** is

7    **DENIED.**

8    The District Court Executive is directed to file this Order,

9    provide copies to counsel for Plaintiff and Defendant, enter

10   judgment in favor of Plaintiff, and **CLOSE** this file.

11   DATED April 20, 2007.

12

13                   S/ CYNTHIA IMBROGNO
                 UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS – 20